# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

TAMMY L. WRIGHT, )
                                                 )
                 Plaintiff, )
v.                                         )     Case No. CIV-17-12-SPS
                                               )
COMISSIONER of the Social )
Security Administration, )
                                               )
                Defendant. )

## OPINION AND ORDER

The claimant Tammy L. Wright requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 39). She completed the twelfth grade while attending special education classes, and has no past relevant work (Tr. 30, 208). The claimant alleges she has been unable to work since her application date of April 16, 2013, due to high blood pressure, thyroid problems, swelling in her feet and legs, nerve problems, vertigo, anxiety, upper respiratory problems, depression, diabetes, knots in the left hand possibly needing surgery, and learning problems (Tr. 20, 207).

**Procedural History**

On April 16, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Edward L. Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 12, 2015 (Tr. 18-32). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, both including upward pulling limitations; stand/walk for two hours in

an eight-hour workday, and sit for six hours in an eight-hour workday; and her ability to push/pull, including operation of hand and/or foot controls, was unlimited other than the above lift/carry restrictions. Additionally, he found she could never climb ladders, ropes, or scaffolds, and could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs. Finally, he found she could perform simple and some complex tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 24). The ALJ thus concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, sewing machine operator, small parts assembler, lens inserter, and cuff folder (Tr. 30-31).

### Review

The claimant's sole contention of error is that the ALJ failed to account for and properly consider her intellectual disability. This contention does not have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of obesity, degenerative joint disease, essential hypertension, hyperlipidemia, diabetes mellitus, an anxiety-related disorder, and an affective disorder (Tr. 20). The records related to the claimant's intellectual abilities reflect the following.

The claimant's Junior/Senior High School record reflects that in the Tenth Grade, she largely received Cs and Ds, but received an F in Biology I; in the Eleventh Grade, she received a few As and Bs, but two Fs in the first semester, and three Ds in the second; in the Twelfth Grade, she received several As, but also received Ds in two classes (Tr. 266).

There were no intelligence test scores with the transcript, and no indication as to whether she attended special education classes (Tr. 266-267).

On June 14, 2013, the claimant presented for a physical consultative exam, at which time she reported a history of, *inter alia*, a learning disability (Tr. 340). On August 17, 2013, Dana D. Foley, Ph.D., conducted a psychological evaluation of the claimant (Tr. 337). Dr. Foley noted that the claimant had adequate recall and some difficulty with memory, showed adequate concentration and attention, had a poor fund of information, and appeared to be of below average intelligence (Tr. 339). She assessed him with generalized anxiety disorder and dysthymia (Tr. 339). Upon receiving this report, a reviewer from the Social Security Administration noted Dr. Foley's diagnosis and, *inter alia*, below average intelligence, asking that the evidence be reviewed and rated accordingly.

State reviewing physicians determined, as to her mental impairments, that she was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and that she was further markedly limited in the ability to interact appropriately with the general public (Tr. 84-85, 98-99). In explanation, the reviewing physician stated that the claimant had trouble with interpersonal relations and would perform better in a setting where she can work mostly alone and with limited requirements to interact with co-workers, but that she would not interact well with the public (Tr. 85, 99). They concluded that she could perform simple and some complex tasks

with routine supervision, relate to supervisors and peers on a superficial work bases, and adapt to a work situations, but that she could not relate to the general public (Tr. 85, 99). Neither of the reviewing physicians made reference to the claimant's intellectual abilities.

At the administrative hearing, the claimant's representative pointed out the claimant's reported learning disability and Dr. Foley's statement that the claimant appeared to have below average intelligence (Tr. 41). The representative then noted that a WAIS (intelligence) exam had not been administered, but that the claimant's high school transcript had been obtained which reflected remedial math and reading (only in the eighth grade), as well as some Fs and Ds (Tr. 42). The ALJ confirmed that the claimant had graduated high school, and the claimant's representative noted that the state reviewing physicians had not considered Listing 12.05, which relates to intellectual ability (Tr. 42). After some discussion, the claimant's representative agreed with the ALJ that no acceptable medical source had indicated the claimant had an intellectual disability, but that the record indicated he should request an IQ test (Tr. 43). The ALJ took the request under advisement (Tr. 43).

In his written opinion, the ALJ noted at step two that the claimant had alleged disability due, in part, to a learning disability, but stated that the evidence in the record did not support such a finding because: (i) the high school transcript did not indicate special education classes, and showed she received a wide range of grades; (ii) she was a high school graduate and could read, write, speak, and understand English; (iii) the record did not reflect that the claimant had been recommended for intelligence testing or cognitive functioning examinations; and (iv) the state reviewing physicians had determined that the

claimant's statements regarding the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective evidence (Tr. 21). At step four, the ALJ again noted the claimant's assertion that he had failed to develop the record by failing to order a WAIS-IV assessment. He noted that the Social Security Administration had sent two letters to the claimant's high school, requesting education records including any IEP, grade records, or evaluations, but that these letters went unanswered (Tr. 29). He further noted the physical and psychological consultative examinations that had taken place, that neither examiner had recommended further intelligence testing, and that Dr. Foley specifically did not diagnose a learning disorder or that further testing was warranted (Tr. 30). He then found that the record had been sufficiently developed, and that there was no cause for further examination at the government's expense (Tr. 30).

The claimant asserts on appeal that the ALJ failed to develop the record with regard to her mental impairment and allegations of intellectual dysfunction. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The ALJ nevertheless has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a

consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. Here, the ALJ specifically stated in his opinion that he believed the medical evidence of record had been adequately developed and noted that he had considered the claimant's request for further evaluation, but found that the need for one was not reflected in the record, that the record did not contain any diagnoses related to her alleged learning disability, and that the mental evaluation only suggested below average intelligence. Furthermore, he noted that the claimant could read and write, and had graduated high school. Moreover, below average intelligence would likely not qualify the claimant for Listing 12.05, where even borderline intellectual functioning does not always qualify a claimant for that Listing. *See Siegle v. Barnhart*, 377 F. Supp. 2d 932, 942 (D. Colo. 2005) ("Even had Dr. Schaefer found that Siegle suffered borderline intellectual functioning, such a finding would not qualify Siegle for Listing 12.05C. . . . Under the circumstances, it was not reasonable to suspect that Siegle's IQ was so low that he might qualify for Listing 12.05C."). *See also Sneed v. Barnhart*, 88 Fed. Appx. 297, 301 (10th Cir. 2004) ("Because the record before the ALJ contained sufficient evidence to evaluate Mr. Sneed's mental impairments, the ALJ did not err in failing to purchase an additional consultative examination to test Mr. Sneed's I.Q."). Despite her assertion that the ALJ ignored this evidence, the Court finds that the ALJ *did not* ignore this evidence but rather properly considered it. Accordingly, the Court finds no error on this point.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The

decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**